# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00560-CV

**David Holubec and Mary Holubec, Appellants**

**v.**

**Carl Brandenberger, Individually and as Next Friend of Payton Brandenberger and Carson Brandenberger; Kathy Brandenberger; First Mason II, Ltd., Appellees**

**FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT NO. 1998084, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING**

## O P I N I O N

This appeal arises from the second trial of a nuisance case on remand from the Texas Supreme Court. *See Holubec v. Brandenberger,* 111 S.W.3d 32 (Tex. 2003). Appellants Carl Brandenberger, individually and as next friend of Payton Brandenberger, Carson Brandenberger and McKenna Brandenberger; Kathy Brandenberger; and First Mason II, Ltd. sued appellants David Holubec and Mary Holubec for nuisance, negligence, and trespass stemming from the Holubecs' operation of a sheep feedlot in close proximity to the Brandenbergers' home.[1] After a jury found against the Holubecs on nuisance, trespass, and negligence, the trial court entered a final judgment awarding actual damages for past personal injuries to the Brandenbergers and punitive damages to both the Brandenbergers and the Lees. The trial court also entered a permanent injunction that abates

---

[1] The Brandenbergers live in a house owned by the Lee family, who operate a ranch adjacent to the Holubecs' property. William R. Lee and Laverne Lee were named plaintiffs in the first trial of this lawsuit. At some point between the first and second trials of this lawsuit, the Lees formed First Mason II, Ltd., a Texas limited partnership, to own their ranch adjacent to the Holubecs' property. The jury's findings in the second trial of this lawsuit continue to refer to "the Lees" instead of First Mason II., Ltd.

the existing nuisance and prohibits the Holubecs from relocating the feedlot to an alternate site on their property. The injunction also directs the Holubecs to remove all of their sheep ranching equipment from the feedlot despite evidence that there was an acceptable level of sheep feeding on the land prior to 1997, when the nuisance conditions began.

The questions presented on appeal concern the propriety of the permanent injunction and damage awards entered by the trial court. Specifically, the Holubecs contend that the appellees are not entitled to injunctive relief because they have an adequate remedy at law in the form of monetary damages. They argue in the alternative that, even if the appellees are entitled to injunctive relief, the permanent injunction entered by the trial court constitutes an abuse of discretion because it grants relief beyond what was requested in the pleadings or supported by the evidence. The Holubecs also challenge the legal sufficiency of the evidence of malice and/or fraud to support the award of punitive damages. We conclude that, although the appellees are entitled to equitable relief in the form of a permanent injunction, the injunction entered by the trial court was overly broad and not supported by the evidence in the record. We also conclude that the evidence of malice and/or fraud was legally sufficient to support the award of punitive damages. Accordingly, we affirm in part and reverse and remand in part.

*Factual and Procedural Background*[2]

The Holubecs own a 450-acre ranch in McCullough County, Texas. In 1994, the Lee family purchased a ranch to the south and west of the Holubecs' ranch. Also in 1994, the Lees' ranch foreman, Carl Brandenberger, moved with his family to a stone house near the common boundary between the Lees' and the Holubecs' properties. According to Carl Brandenberger, when

---

[2] A detailed version of the facts surrounding the underlying lawsuit is available at *Holubec v. Brandenberger,* 111 S.W.3d 32 (Tex. 2003) ("*Holubec I*").

he and his family moved to the stone house, there were "only a few sheep and a brushy pasture" on the Holubecs' adjacent property.

At the end of 1996, the Holubecs began clearing land near the Brandenbergers' house to construct a ten-acre feedlot for sheep. The feedlot's ten acres were partitioned from a twenty-acre area of fenced pasture the Holubecs had used since 1986 to wean lambs and fatten them for sale. Before being cleared, this pasture was thick with mesquite and brush, although lanes had been cut to permit the sheep to reach feeders placed on the property. Although it is undisputed that the Holubecs fed sheep on the twenty-acre tract beginning in 1986, the Holubecs kept no written records of how many sheep were kept on the twenty-acre tract between 1986 and 1997. When the ten-acre feedlot was constructed, it contained twenty sheep pens and other improvements to accommodate about 6000 sheep. David Holubec testified that he kept as many as 5800 sheep on the ten-acre feedlot at various times. The nearest sheep pen on the ten-acre feedlot was approximately 135 feet from the Brandenbergers' home.

Carl Brandenberger testified that the nuisance conditions began when thousands of sheep were confined in the newly constructed feedlot pens. Specifically, by August 1997, the Brandenbergers noticed foul odors, swarms of flies, increased dust, and noise from bleating lambs being weaned from their mothers. In February 1998, the Holubecs added elevated lights to the feedlot to permit night work. The Brandenbergers claimed that these lights illuminated their house and disturbed their sleep.

On July 31, 1998, the Brandenbergers and the Lees filed suit, complaining that the foul odors, flies, dust, noise, and light resulting from the construction and operation of the ten-acre feedlot constituted a nuisance. The case proceeded to trial before a jury, which found the feedlot to be a nuisance and the Holubecs negligent in its operation or construction. The trial court granted

3

a permanent injunction which enjoined the Holubecs from operating the sheep feedlot anywhere on their 450-acre ranch. The Holubecs appealed, and this Court affirmed the trial court's judgment. *See Holubec v. Brandenberger,* 58 S.W.3d 201 (Tex. App.—Austin 2001), *rev'd, Holubec I,* 111 S.W.3d at 40. The Holubecs then appealed to the Texas Supreme Court. The supreme court reversed and remanded the case to the trial court due to a defective jury submission concerning the Holubecs' affirmative defense under the Right to Farm Act. *See* Tex. Agric. Code Ann. § 251.004(a) (West 2004); *Holubec I,* 111 S.W.3d at 39.

On remand, a second jury found that (1) the Holubecs' feedlot has been a nuisance since July 31, 1997; (2) the Holubecs have committed a trespass to the Lees' and Brandenbergers' interest in their property; (3) the Holubecs have been negligent in the location, construction, or operation of their feedlot; (4) the Holubecs fraudulently concealed the fact that they were going to operate a sheep feedlot; and (5) the harm to the Lees and Brandenbergers resulted from malice or fraud on the part of David Holubec or Mary Holubec. The trial court's final judgment awarded actual damages for past personal injuries to the Brandenbergers and punitive damages to both the Brandenbergers and the Lees. Additionally, the trial court permanently enjoined the Holubecs from:

> 1. Operating a feedlot or stabling, confining, feeding, weaning or maintaining any animals in confinement areas that do not sustain such animals on the crops, vegetation, forage growth, or post harvest residues produced in such areas in the normal growing season, on any of [the Holubecs'] land that is within 1000 feet of the boundary line between [the Holubecs'] land and [the Lees'] land, other than confinement in existing working pens for normal ranching activities such as medicating, sorting, and shipping.
>
> 2. Feeding hay or other feed on the ground within 1000 feet of the Rock House on [the Lees'] land in a manner which will encourage or result in the breeding or proliferation of fly larva and/or flies in the area.

3.  Placing feed troughs or self-feeders within 1000 feet of the Rock House on [the Lees'] land in close proximity to the Rock House or in greater number that existed prior to November 1996 or at the time [the Holubecs] began construction on the pens which ultimately formed the feed lot operation in question, whichever came first.

4.  Maintaining lights on [the Holubecs'] land that shine directly on the existing residence (Rock House) on [the Lees'] property.

5.  Disposing of dead animals on Defendants' Land within one-half mile radius of the Rock House on Plaintiffs' Land or within 1,000 feet of the boundary line between Plaintiffs' Land and Defendants' Land.

In addition to this prohibitory injunctive relief, the trial court also granted mandatory injunctive relief ordering the Holubecs to take the following affirmative action:

1.  Remove all feeders from the pens in the approximately 10 acre feedlot adjacent to Plaintiffs' Land;

2.  Remove all sheds and water troughs from the pens in the approximately 10 acre feedlot adjacent to Plaintiffs' Land;

3.  Remove the wire fencing and feedlot pens now existing in the approximately 10 acre feedlot adjacent to Plaintiffs' Land;

4.  Remove Southernmost overhead lights pole now existing in the approximately 10 acre feedlot adjacent to Plaintiffs' Land;

5.  Clean the feedlot area of manure, spilled feed and hay residue in such a manner that substantially all fly breeding areas are destroyed, feedlot odor is remediated and hay residue will not provide a breeding site for stable flies or produce mold.

In this appeal, the Holubecs do not dispute the jury's findings of nuisance, negligence, and trespass. Instead, they contend that the trial court abused its discretion by entering a permanent injunction because the appellees possess an adequate remedy at law in the form of monetary damages. In the alternative, they contend that, even if injunctive relief is appropriate, the permanent injunction entered by the trial court constitutes an abuse of discretion because the relief awarded

5

exceeds that requested in the pleadings or supported by the evidence. The Holubecs also challenge the legal sufficiency of the evidence of malice and/or fraud to support the punitive damage award.

### Injunction

The Holubecs contend that the trial court abused its discretion by entering a permanent injunction because the appellees possess an adequate remedy at law in the form of monetary damages. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 284 (Tex. 2004) ("A permanent injunction issues only if a party does not have an adequate remedy at law.") In support of this position, they point to the jury's findings regarding the type and amount of damages for the trial court to award the Brandenbergers and the Lees for their injuries. The jury found that the Brandenbergers should be awarded $32,500 for past personal injuries and $20,000 in punitive damages, and that the Lees should be awarded $10,000 in punitive damages. The jury also found that the Brandenbergers were not entitled to damages for injuries "that in reasonable probability will be sustained in the future." Finally, the jury found that $82,500 would "fairly and reasonably compensate the owner of the Lee Ranch for the reduction in value, if any, of the entire ranch, including the rock house and the surrounding one acre of land, which was proximately caused by the nuisance, trespass, and/or negligence." The Holubecs assert that these jury findings amount to a conclusive determination that the appellees possess an adequate legal remedy that precludes equitable relief in the form of an injunction.

The Holubecs advanced a similar argument in this Court on appeal from the first trial in 2001. *See Holubec,* 58 S.W.3d at 210-211. Specifically, they argued that the jury's finding that the nuisance created by the Holubecs' feedlot caused a reduction in the market value of the

6

Brandenbergers' home equal to $12,932.50 precluded equitable relief in the form of an injunction. *Id.* In addressing this argument, we acknowledged the general rule that "the equitable remedy of injunctive relief is ordinarily available only when the legal remedy of damages will not be adequate." *Id.* (citing *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 893-94 (Tex. 1937)). We then concluded, however, that "the question of whether the plaintiffs had an adequate legal remedy at law was for the court and not the jury" and that the jury's finding of damages does not have the "conclusive effect" of precluding an injunction. *Id.*

Similarly, the jury's findings in the second trial concerning the proper amount and type of damages to award the appellees do not have the conclusive effect of precluding an injunction. "The jury does not determine the expediency, necessity, or propriety of equitable relief." *Shields v. State*, 27 S.W.3d 267, 272 (Tex. App.—Austin 2000, no pet.) (citing *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979)). Instead, "the determination whether to grant an injunction based on ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury." *Id.* Therefore, it was appropriate for the trial court to assess the need for or propriety of a permanent injunction to abate the feedlot nuisance as a potential remedy in addition to monetary damages.

The trial court was within its discretion to determine that injunctive relief is appropriate in this case because there was evidence that the nuisance is of a recurring nature. When the nuisance complained of is of a "recurring nature," an injunction "will lie irrespective of legal remedy at law." *Lamb v. Kinslow*, 256 S.W.2d 903, 905 (Tex. Civ. App.—Waco 1953, writ ref'd n.r.e.). Monetary damages are not always an adequate remedy in situations where the nuisance is of a recurring nature because damages could be recovered only as of the time of the bringing of the

7

action, and a multiplicity of suits would be necessary. *See Ellen v. Bryan*, 410 S.W.2d 463, 465 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.). In this case, Mr. Holubec testified that he would continue to operate the ten-acre feedlot in the manner at issue unless the court ordered him to do otherwise. He stated that he intended to keep the feedlot in its current location indefinitely, 135 feet from the Brandenbergers' house. The trial court could have reasonably concluded that the Holubecs are operating and will continue to operate the feedlot in a manner so as to create a recurring nuisance. The trial court's award of past damages and punitive damages will not prevent the Holubecs from operating their feedlot in this manner. Therefore, without injunctive relief, the Brandenbergers will continue to experience the nuisance caused by the Holubecs' operation of the feedlot. Under these circumstances, the trial court's award of injunctive relief affords the Brandenbergers and the Lees relief from a recurring nuisance. This relief is in addition to, rather than duplicative of, the award of monetary damages, and is designed to grant the appellees complete relief. Granting injunctive relief in addition to monetary damages awarded is not an abuse of discretion in these circumstances.

The Holubecs contend in the alternative that, even if the appellees are entitled to injunctive relief, the permanent injunction entered by the trial court constitutes an abuse of discretion because it grants relief beyond that requested in the pleadings or supported by the evidence. Specifically, the Holubecs complain that the injunction is overly broad because it prevents them from relocating their feedlot to the northwest corner of their property despite the fact that the appellees conceded and even sponsored evidence at trial that the northwest corner of the property would be "a perfect feedlot site." Appellants also complain that the injunction directs them to remove *all* of their sheep farming equipment from the ten-acre feedlot area despite evidence that there was an

8

acceptable level of sheep farming in this area prior to November 1996, before the feedlot was constructed and the nuisance conditions began.

We review a trial court's issuance of injunctive relief for an abuse of discretion. *Operation Rescue-National v. Planned Parenthood,* 975 S.W.2d 546, 560 (Tex. 1998). An abuse of discretion occurs when a trial court acts in an unreasonable or arbitrary manner, or without any reference to any guiding rules or principles. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 850 (Tex. App.—Austin 2002, pet. denied). A trial court has no discretion to grant injunctive relief without supporting evidence, but it has some latitude in fashioning the details of appropriate relief. *See Operation Rescue-National,* 975 S.W.2d at 560.

In *Holubec I,* the Holubecs argued that the permanent injunction entered by the trial court in the first trial of this case was overly broad. 111 S.W.3d at 39. Although the case was reversed and remanded on other grounds, the supreme court acknowledged the Holubecs' complaint regarding the scope of the permanent injunction entered by the trial court, stating:

> a permanent injunction "must not grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity." Nor should a decree of injunction be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights. Rather, "injunctions must be narrowly drawn and precise."

*Id.* at 39-40 (citations omitted). The court then concluded, "[w]e do not apply these principles to the injunction at bar because we have already determined that it must be vacated." *Id.*

In this appeal, we are asked to apply the principles articulated in *Holubec I* to the permanent injunction entered by the trial court. Because one of the Holubecs' complaints concerns

9

their ability to relocate the existing feedlot an alternate location, we also note that an injunction will be granted only to restrain actually existing nuisances, and not to restrain an intended act on the ground that it may become a nuisance. *See Haynes v. Hedrick*, 223 S.W. 550, 551 (Tex. Civ. App.—Dallas 1920, no writ). An injunction against a legitimate business will not be granted because it is feared that it may become a nuisance, for the presumption is that it will be conducted in a proper manner. *See id*. Therefore, "before the construction of a building and the operation of a business not a nuisance per se will be enjoined it must appear that the proposed use of the building will necessarily create a nuisance." *Conner v. Smith*, 433 S.W.2d 911, 913 (Tex. Civ. App.—Corpus Christi 1968, no writ).

Here, the appellees do not contend that the Holubecs' feedlot constitutes a nuisance per se regardless of its proximity to their home, and they did not put on evidence that the operation of the feedlot in an alternate location would, necessarily, constitute a nuisance. Instead, the appellees introduced evidence at trial that the nuisance at issue is the ten-acre feedlot located 135 feet from the Brandenbergers' house. Appellees also introduced evidence that the Holubecs could feasibly relocate the feedlot to the northwest corner of their property. They alleged in their pleadings that "[The Holubecs'] business could be conducted elsewhere, even in another location on [the Holubecs'] extensive property, with little or no harm to others." Carl Brandenberger testified at trial that the land in the northwest corner of the Holubecs' property would be "a perfect feedlot site if you were looking to build a feedlot" and that "it's probably even better than the feed lot site [near the Brandenbergers' house] because the terrain slopes faster."

Despite this concession by the appellees, the trial court entered a permanent injunction prohibiting the Holubecs from operating a feedlot within 1000 feet of the entire boundary line

10

between the Holubecs' and the Lees' land. The alternate site for the feedlot in the northwest corner of the Holubecs' property lies within 1000 feet of the boundary line in that area. Therefore, under the permanent injunction entered by the trial court, the Holubecs are enjoined from relocating their feedlot to the northwest corner location that the parties do not dispute would not constitute a nuisance. Because the appellees concede and even offered evidence demonstrating that the site in the northwest corner of the Holubecs' property would be an acceptable site for the feedlot, the trial court's injunction affords the appellees more relief than they are entitled to and constitutes an abuse of discretion. *See, e.g., Operation Rescue-National,* 975 S.W.2d at 560 (stating that the record must contain evidence supporting each provision of injunctive relief); *Republican Party of Tex. v. Dietz,* 940 S.W.2d 86, 93 (Tex. 1997) (holding that the district court abused its discretion in granting an injunction which granted more relief than what was requested by the plaintiff).

The permanent injunction is also overly broad because it directs the Holubecs to remove all feeders, sheds, water troughs, and wire fencing from the ten-acre feedlot site despite evidence in the record that some form of sheep farming existed on the site of the ten-acre feedlot, known as the "brushy trap," prior to November 1996 that did not constitute a nuisance. While the record is unclear as to exactly how many sheep were run on the "brushy trap" prior to November 1996, both David Holubec and Mary Holubec testified that they began feeding sheep there in 1986. According to David Holubec, there were approximately 27 feeders on the "brushy trap" between 1986 and 1997. Carl Brandenberger confirmed the Holubecs' testimony that sheep were fed on the "brushy trap" when he moved with his family to the stone house in 1994. He stated that the nuisance conditions did not begin until the ten-acre site was transformed into a feedlot after November 1996. Thus, some amount of sheep feeding or farming activity on the ten-acre site did not constitute a

11

nuisance. From this record, we conclude that injunctive relief requiring the complete removal of the Holubecs' sheep farming equipment on the ten-acre feedlot site prohibits more sheep farming activity than the evidence supports and, as a result, is overly broad and constitutes an abuse of discretion.

***Punitive Damages***

Finally, the Holubecs contend that the evidence is legally insufficient to support an award of punitive damages. In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the verdict, crediting favorable evidence that a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient when there is a complete absence of evidence of vital fact, the evidence offered to prove that fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

There was evidence presented to the jury that the nuisance created by the appellants was severe enough to require the Brandenbergers to move out of their home. There was evidence that the appellants were aware of the severity of the nuisance and took no action to alleviate it. There was also evidence that the appellants denied, for years, the existence of conditions and circumstances that a reasonable fact-finder could conclude were not debatable. Finally, there was evidence that could have allowed a reasonable fact-finder to conclude the appellants knowingly exacerbated the nuisance due to the ill-will and litigation between the parties. Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence to allow a reasonable juror to determine

12

that the appellants acted with "malice" as defined in Chapter 41 of the Civil Practice and Remedies Code and that punitive damages were appropriate.

### *Conclusion*

We hold that the trial court acted within its discretion to award injunctive relief in addition to the monetary damages awarded by the jury because the injunctive relief is designed to remedy a recurring nuisance. We also hold—with two exceptions—that the trial court was within its discretion to award both the prohibitory and mandatory injunctive relief detailed in the court's Second Amended Final Judgment. Therefore, the judgment of the trial court awarding past damages as well as punitive damages is affirmed. Although we find that the trial court did not abuse its discretion by considering and awarding injunctive relief, we conclude that the permanent injunction entered by the trial court is overly broad in two respects: (1) it prohibits the operation of a feedlot in an area of the appellants' property that it is undisputed would not constitute a nuisance, and (2) by requiring removal of all feeders, sheds, and water troughs from the 10-acre feedlot site, it effectively prohibits pre-November 1996 sheep farming activity on the ten-acre feedlot site that was not shown to be a nuisance. Therefore, the permanent injunction entered by the trial court is affirmed in part and reversed in part. This cause is remanded to the trial court for reformation by the court of the award of injunctive relief in the Second Amended Final Judgment consistent with the evidence adduced at trial in a manner that (1) does not enjoin appellants from constructing and operating a feedlot in the northwest corner of their property in an area that the parties did not dispute at trial would constitute

an acceptable site, and (2) does not require appellants to take affirmative action that would amount to curtailing pre-November 1996 levels of sheep farming activity on the ten-acre feedlot site.

_____

G. Alan Waldrop, Justice

Before Justices B. A. Smith, Pemberton, and Waldrop

Affirmed in Part; Reversed and Remanded in Part

Filed:   December 29, 2006