COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-080-CV

 

 

MCAFEE MX D/B/A MCAFEE MOTO CROSS                           APPELLANTS



AND
MICHAEL MARK MCAFEE

 

                                                   V.

 

RICHARD FOSTER, PHILLIP FITZGERALD,                                 APPELLEES

JAMES
AND SHERRI ESTRADA, 

RAY
AND GABRIELLE FLETCHER, 

STEVE
AND SANDY FAIRFIELD, 

TIM
HITCHCOCK, AND HADEN COWDRY

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

 

Appellants McAfee MX d/b/a
McAfee Moto Cross and Michael Mark McAfee (collectively, AMcAfee@) appeal
from the trial court=s final
judgment and permanent injunction.  We
affirm. 








McAfee operated a motocross
course on his land near Gainesville, Texas. 
The course consisted of two tracksCone for adults and one for childrenCand ran four days a week from 9 a.m. or noon until dusk.  Richard Foster, Phillip Fitzgerald, James and
Sherri Estrada, Ray and Gabrielle Fletcher, Steve and Sandy Fairfield, Tim Hitchcock,
and Haden Cowdry (collectively, Aappellees@) are McAfee=s neighbors, residing or working within 1100 feet of McAfee=s property.  In 2006, appellees
sued to permanently enjoin McAfee from operating the motocross course, claiming
it was a nuisance due to the excessive noise and dust it produced, among other
problems.  

The trial court initially
granted a temporary restraining order and later a temporary injunction.  Following a two-day jury trial, the trial
court rendered judgment and issued a permanent injunction in favor of
appellees.  McAfee appeals.

In his first and second
points, McAfee challenges the legal and factual sufficiency of the evidence to
support the jury=s finding
that his operation of the motocross track substantially interfered with
appellees= use and
enjoyment of their land by causing unreasonable discomfort or annoyance to
persons of ordinary sensibilities. 








We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact.[2]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.[3]


An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.[4]  We are required to consider all of the
evidence  in the case in making this determination,
not just the evidence that supports the finding.[5]









 A nuisance is a condition that substantially
interferes with the use and enjoyment of land by causing unreasonable
discomfort or annoyance to persons of ordinary sensibilities.[6]  Foul odors, dust, noise, and bright lights
may constitute a nuisance if sufficiently extreme.[7]  The amount of annoyance or inconvenience that
must be produced to constitute a nuisance depends on the varying facts of each
case.[8]   













At trial, many of the
appellees and two other neighbors who were not parties to the lawsuit testified
that McAfee=s motocross
tracks substantially interfered with the use and enjoyment of their land.  Fitzgerald described the sound from the
tracks as thirty chainsaws in a neighbor=s backyard and stated that it was hard to carry on a conversation
outdoors.  Ray Fletcher testified that
the constant noise prohibited entertaining and reading outside.  Hitchcock found there was Ano way@ to play
sports outside with his family and that his horse required a tranquilizer in
order to be shoed while the tracks were in operation.  Foster also stated that his family could not
have an outdoor picnic Abecause you
couldn=t speak to each other@ and that his horses would spook on part of his property.  Sherri Estrada claimed that the noise from
the tracks prevented her grandchildren from fishing and playing outside.  Sandy Fairfield, who owned a storage business
across the street from the tracks, stated that it was difficult to work there
because of the constant noise, analogizing the sound to a bunch of jack
hammers.[9]  Several witnesses also discussed odor and
dust problems.      Further, Mike Fann, an engineer specializing in noise and
vibration control, opined that appellees= complaints were Aabsolutely reasonable.@  Fann considered a 1977 EPA
study that concluded two- and four-stroke engines (the types used on McAfee=s tracks) would harm the community when the noise systemically
exceeded fifty-five decibels.  Fann also
referred to Texas Penal Code section 42.01, the disorderly conduct statute,
which creates a presumption that Aa noise is . . . unreasonable if the noise exceeds a decibel level of
85 after the person making the noise receives notice from a magistrate or peace
officer that the noise is a public nuisance.@[10]  Fann concluded that twenty or
more motorcycles a day on the tracks would exceed the eighty-five decibel
benchmark Aon a regular
basis,@ and one of the loudest bikes would surpass eighty-five decibels even
at a distance of 1422 feet.[11]  Officer Toby Bean=s testimony that he received a sound reading of ninety-six decibels
from the tracks corroborated Fann=s conclusions, and the jury saw a DVD made by appellees showing sound
readings in the sixty and seventy decibel range.       McAfee
testified that he did not think motorcycles were loud, and another witness
denied having any difficulty carrying on a conversation while visiting the
tracks.  Further, McAfee presented expert
testimony that controverted appellees= expert to some extent.[12]    








In sum, appellees presented
testimony that McAfee=s motocross
activities substantially interfered with their use and enjoyment of their land
by causing unreasonable discomfort and annoyance to them, and they offered expert
testimony supporting this testimony. 
Applying the appropriate standards of review, we hold that the evidence
was both legally and factually sufficient to support the jury=s nuisance finding. 
Accordingly, we overrule McAfee=s first and second points.   

 In his third point, McAfee argues that the
trial court erred in granting a permanent injunction because the trial court=s balancing of the equities was not supported by legally or factually
sufficient evidence.   








Abatement of a lawful
business is a harsh remedy, and even when the jury finds that a nuisance
exists, the trial court should balance the equities in order to determine if an
injunction is appropriate.[13]  The trial court should consider injury that
may result to the defendant or the public by granting the injunction as well as
injury suffered by the plaintiffs if the injunction is denied.[14]  Public convenience or necessity, economic
burden to the defendant, and the adequacy of a legal remedy may affect this
balance.[15]  An injunction against the nuisance may issue
where the injury to the defendant and the public is slight or disproportionate
to the injury suffered by the plaintiffs because of the nuisance.[16]  We review the trial court=s decision whether to issue an injunction for an abuse of discretion.[17]

McAfee claimed that the
motocross course was his sole source of income. 
He reported a business income loss of $11,847.00 on his 2004 income tax
return, however, and declared the property Aagricultural.@[18]  Further, in the past McAfee
operated a fish business on the property without producing excessive
noise.  








The evidence showed that
families came to McAfee=s course and
enjoyed the motocross sport together. 
One witness stated that since McAfee=s tracks had been closed down, he had to drive approximately
twenty-eight miles farther each way to get to another motocross course.  The activity at the tracks, however, was so
loud that on four days each week appellees effectively could not use the land
outside of their homes.  Further, on at
least three occasions a CareFlite helicopter landed near the tracks to evacuate
an injured rider. 

Considering the competing interests,
the trial court could have concluded that a permanent injunction would cause
only slight injury to McAfee and the public or that such injury would be
disproportionate to appellees= injuries because of the nuisance. 
Applying the appropriate standards of review, we hold that the evidence
was legally and factually sufficient to support the trial court=s balancing of the equities and that the trial court did not abuse its
discretion in issuing the permanent injunction.[19]  








McAfee further contends under
his third point that the permanent injunction is overly broad and the trial
court Ashould have drawn the injunction so as to eliminate the sound that can
emanate from [McAfee=s] property,
rather than prohibit the activity in its entirety.@  Fann testified, however, that
from the distance at which appellees live, even one bike could exceed
eighty-five decibels.  Thus, it would be
impossible for the trial court to craft an injunction to eliminate the
excessive noise without prohibiting the activity.  Further, the injunction only prohibits McAfee
from Aoperating a public or private motorcross [sic] facility@ on the property and specifically allows Avehicles operated by immediate family members of [McAfee] who are
residents on the real property or those related to [McAfee] by first degree
consanguinity or affinity.@  We hold that the restrictions
placed on the motocross activity are reasonable, and the permanent injunction
is narrowly drawn and precise.[20]  

For all of these reasons, we
overrule McAfee=s third
point.[21]








In his fourth and fifth
points, McAfee challenges the legal and factual sufficiency of the evidence supporting
the permanent injunction, arguing that appellees had an adequate remedy at law
and had not suffered an irreparable injury. 

Permanent injunctive relief
requires a showing of, among other elements, irreparable injury and the absence
of an adequate remedy at law.[22]  AIrreparable injury@ occurs when the injury is of such a nature that the injured party
cannot be adequately compensated in damages, or the damages cannot be measured
by any certain pecuniary standard.[23]  A remedy is Aadequate,@ for
purposes of determining entitlement to an injunction, when it is complete,
practical, and efficient to the prompt administration of justice.[24]  The existence of a remedy at law is not
ground for denial of injunctive relief unless the legal remedy is as practical
and efficient to the ends of justice as the equitable remedy.[25]









The equitable remedy of
injunctive relief is ordinarily available only when the legal remedy of damages
will not be adequate.[26]  When a nuisance is of a recurring nature,
however, the plaintiffs need not seek damages, and injunctive relief may be
appropriate.[27]  At trial, appellees sought only injunctive
relief. 








Appellees testified that the
excessive noise from the track was a Aconstant@ on the four
days each week when the track was in operation. 
Further, appellees= expert Fann
testified that (1) no wall or other mechanism could feasibly be installed to
reduce the noise levels to an acceptable threshold; (2) there was no way to
assign a dollar value to the noise pollution, lack of sleep, and difficulty
conversing experienced by appellees; and (3) the only way to discontinue the
nuisance was to shut the motocross track down.[28]   McAfee=s expert Ware stated that sound dissipates over distance according to
many factors, and McAfee could implement measures to reduce the sound from the
tracks. 

        The evidence showed that McAfee=s tracks effectively precluded appellees= use of their property and shutting down the tracks was the only
feasible solution.  The noise from the tracks
was recurring, and appellees did not seek money damages at trial.  Further, the trial court would not have
abused its discretion in concluding that damages were not Aas practical and efficient@ as injunctive relief in this case.[29]  Applying the appropriate standards of review,
we hold that the evidence was legally and factually sufficient to show that
appellees had suffered an irreparable injury and had no adequate remedy at law.[30]  We overrule McAfee=s fourth and fifth points.                








In his sixth point, McAfee
claims that the trial court abused its discretion by refusing to submit his
proposed jury question regarding the social benefit of the motocross track.[31]  








Although a party to an
equitable action has the right to a trial by jury, only ultimate issues of fact
are submitted for jury determination.[32]  The jury does not determine the expediency,
necessity, or propriety of equitable relief.[33]  The cases that McAfee cites do not support
his argument that social benefit is an ultimate issue of fact that must be
submitted to the jury.[34]  To the contrary, at least one court of
appeals has discussed Asocial
utility@ in the context of the trial court=s balancing of the equities.[35]  McAfee has failed to show error[36];
therefore, we overrule his sixth point. 

Having overruled all of
McAfee=s points, we affirm the trial court=s judgment. 

 

PER CURIAM

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and MCCOY,
JJ.

 

DELIVERED:  February 7, 2008                                     











[1]See Tex. R. App. P. 47.4.





[2]Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362B63
(1960).





[3]City
of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).





[4]Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).





[5]Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07
(Tex.), cert. denied, 525 U.S. 1017 (1998).





[6]Schneider
Nat=l
Carriers, Inc. v. Bates, 147 S.W.3d 264, 269 (Tex. 2004).





[7]Id.





[8]Gulf
Oil Corp. v. Vestal, 231 S.W.2d 523, 525 (Tex. Civ. App.CFort
Worth 1950), aff=d, 149
Tex. 487, 235 S.W.2d 440 (1951).





[9]McAfee
contends that appellees=
subjective testimony was outlandish and exaggerated and that their opinions
were not Arationally
based@ as
required by Texas Rule of Evidence 701.  
McAfee, however, did not object to the above testimony under Rule 701;
thus, he has waived any complaint that the testimony was inadmissible for that
reason.  See Tex. R. App. P. 33.1(a); Bushell v.
Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  Further, jurors are the sole judge of the
credibility of the witnesses and the weight to give their testimony, and we
must assume jurors decided all credibility questions in favor of the verdict if
reasonable people could do so.  City
of Keller, 168 S.W.3d at 819.  After
reviewing the record, we conclude that a jury could reasonably have found
appellees credible.    





[10]See Tex. Penal Code Ann. '
42.01(a)(5), (c)(2) (Vernon 2003 & Supp. 2007).





[11]The
number of motorcycles on the track on any given day varied, but McAfee claimed
he did not allow more than forty riders on the track at a time.  Officer Toby Bean recalled seeing twenty or
thirty motorcycles at the track when he was there, and one weekend in August
2005 brought a total of 132 motorcycles to the track. 





[12]McAfee=s
expert Kevin Ware testified that when measuring sound, a time-weighted average
is more accurate than an instantaneous reading because sound levels fluctuate,
and noise ordinances are based on time-weighted averages.  Ware surmised that the measurements appellees
recorded with their sound meter were instantaneous readings.  





[13]Storey
v. Cent. Hide & Rendering Co., 148 Tex. 509, 514B15,
226 S.W.2d 615, 618B19
(1950); Lee v. Bowles, 397 S.W.2d 923, 926B27
(Tex. Civ. App.CSan
Antonio 1965, no writ); Fargason v. Econ. Furniture, Inc., 356 S.W.2d
212, 215 (Tex. Civ. App.CAustin
1962, writ ref=d
n.r.e.).





[14]Storey, 148
Tex. at 514B15,
226 S.W.2d at 618B19.





[15]See
Conner v. Smith, 433 S.W.2d 911, 914 (Tex. Civ. App.CCorpus
Christi 1968, no writ) (adequate remedy at law);  Schiller v. Raley, 405 S.W.2d 446, 447
(Tex. Civ. App.CWaco
1966, no writ) (public necessity); Hughes v. Jones, 94 S.W.2d 534, 536B37
(Tex. Civ. App.CEastland
1936, no writ) (economic harm to defendants). 





[16]Storey, 148
Tex. at 515, 226 S.W.2d at 619.





[17]See
Vaughn v. Drennon, 202 S.W.3d 308, 313 (Tex. App.CTyler
2006, no pet.); Estancias Dallas Corp. v. Schultz, 500 S.W.2d 217, 221 (Tex.
Civ. App.CBeaumont
1973, writ ref=d
n.r.e); Fargason, 356 S.W.2d at 215.





[18]McAfee
opened the tracks in January 2004 and started charging riders in March 2004. 





[19]See
Estancias, 500 S.W.2d at 221 (holding that trial court did
not abuse its discretion in granting permanent injunction where noise prevented
plaintiffs from entertaining in their backyards and carrying on normal
conversations in their homes).  





[20]See Schneider,
147 S.W.3d at 287 (holding that permanent injunctions must be Anarrowly
drawn and precise@); Operation
Rescue-Nat=l v.
Planned Parenthood of Houston and Se. Tex., Inc., 975
S.W.2d 546, 560 (Tex. 1998)  (holding
that trial court has Asome
latitude@ in
fashioning the details of appropriate injunctive relief); Shields v. State,
27 S.W.3d 267, 271 (Tex. App.CAustin 2000, no pet.)
(holding that an injunction should be broad enough to prevent a repetition of
the evil sought to be corrected).





[21]McAfee
also argues that appellees should not have been granted equitable relief
because they lacked clean hands.  James
Appleton, an expert in forensic video and audio analysis, testified in a bill
of exception at the hearing on McAfee=s motion for new trial that
the audio on appellees= DVD
showing their sound readings had been altered. 
McAfee, however, does not argue that the trial court improperly denied
his motion for new trial.  Thus, we do
not address this argument.  See Pat
Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (holding that
appellate court cannot reverse a trial court=s judgment on unassigned
error).   





[22]Triantaphyllis
v. Gamble, 93 S.W.3d 398, 401 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied).





[23]Montfort
v. Trek Res., Inc., 198 S.W.3d 344, 353 (Tex. App.CEastland
2006, no pet.); Fox v. Tropical Warehouses, Inc., 121 S.W.3d 853, 857
(Tex. App.CFort
Worth 2003, no pet.).





[24]Matagorda
County Hosp. Dist. v. City of Palacios, 47 S.W.3d 96, 103 (Tex.
App.CCorpus
Christi 2001, no pet.).





[25]Khaledi
v. H.K. Global Trading, Ltd., 126 S.W.3d 273, 284 (Tex.
App.CSan
Antonio 2003, no pet.); Irving Bank & Trust Co. v. Second Land Corp.,
544 S.W.2d 684, 688 (Tex. Civ. App.CDallas 1976, writ ref=d
n.r.e.).





[26]Holubec
v. Brandenberger, 58 S.W.3d 201, 210 (Tex. App.CAustin
2001), rev=d on
other grounds, 111 S.W.3d 32 (Tex. 2003).





[27]Holubec
v. Brandenberger, 214 S.W.3d 650, 656 (Tex. App.CAustin
2006, no pet.) (holding that injunctive relief was appropriate because nuisance
was of a recurring nature); Hill v. Villarreal, 362 S.W.2d 348, 349
(Tex. Civ. App.CWaco
1962, writ ref=d
n.r.e.); Landwer v. Fuller, 187 S.W.2d 670, 673 (Tex. Civ. App.CAmarillo
1945, writ ref=d
w.o.m.). 





[28]McAfee
contends that appellees=
injuries are compensable through damages, citing appellee Richard Foster=s
testimonyCcontained
in a bill of exception made during a temporary injunction hearingCthat
his property declined in value by over $150,000.00 because of the motocross
track.  The trial court, however,
sustained appellees=
objection to this testimony, and McAfee does not argue that it was improperly
excluded.  Therefore, we do not consider
this argument.  See Pat Baker
Co., 971 S.W.2d at 450; Sommers v. Concepcion, 20 S.W.3d 27, 41
(Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (holding that a party=s
remedy for an adverse ruling is to assign error regarding the adverse ruling). 





[29]Khaledi, 126
S.W.3d at 284; Irving Bank & Trust Co., 544 S.W.2d at 688.





[30]Cf.
Storey, 148 Tex. at 512B13, 226 S.W.2d at 617B18
(holding that plaintiffs had adequate remedy at law where rendering plant=s
inconvenience and odors occurred only occasionally, surrounding land had sold
for increased value since plant was built, and plant owner was Acarrying
out the latest and best recognized scientific practices to keep down odors and
flies@).





[31]The
proposed question stated, ADo you find from a
preponderance of the evidence that the operation of the McAfee MX motor [sic]
has no beneficial social impact?@ 





[32]State
v. Tex. Pet Foods, Inc., 591 S.W.2d 800, 803 (Tex. 1979); Doll
v. Hurst, No. 03‑02‑00576‑CV, 2003 WL 21939711, at *8
(Tex. App.CAustin
Aug. 14, 2003, pet. denied) (mem. op.).





[33]Tex.
Pet Foods, Inc., 591 S.W.2d at 803.





[34]See
Elbaor v. Smith, 845 S.W.2d 240, 243B44
(Tex. 1992) (holding that contributory negligence question should have been
submitted to jury); Tex. Pet Foods, Inc., 591 S.W.2d at 803B05
(holding that the probability of defendant=s continued action, relevant
to issuance of permanent injunction, was a question for the trial court rather
than the jury); Shields, 27 S.W.3d at 273 (AThe
principle that the court rather than the jury exercises equitable powers
answers [appellant=s]
complaint that the court could not include these prohibitions in the order
without submitting specific jury questions thereon.@); Lehmann
v. Wieghat, 917 S.W.2d 379, 382 (Tex. App.CHouston
[14th Dist.] 1996, writ denied) (holding that a controlling issue is one which
requires a factual determination to render judgment in the case). 





[35]See
Speedman Oil Co. v. Duval County Ranch Co., 504 S.W.2d 923, 930B31
(Tex. Civ. App.CSan
Antonio 1974, writ ref=d
n.r.e.).





[36]See
Jackson v. U.S. Fid. & Guar. Co., 689 S.W.2d 408, 412 (Tex.
1985) (holding that an appellant has the burden to show that the judgment of
the trial court was erroneous).