



# MEMORANDUM OPINION

No. 04-09-00675-CV

John **HALL** and Roberta Wagner,
Appellants

v.

Karen **SEAL** and Russell Seal,
Appellees

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 05-04-17328-CV
Honorable James M. Simmonds, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
            Phylis J. Speedlin, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  January 5, 2011

AFFIRMED IN PART; REVERSED & REMANDED IN PART; REVERSED & RENDERED
IN PART

This appeal arises from a permanent injunction directed toward several nuisances.

Appellants John Hall and Roberta Wagner argue that the injunction was improper because

Appellees Karen and Russell Seal failed to prove that they suffered an irreparable injury or

lacked an adequate legal remedy.  They also argue that the trial court erred by failing to balance

the equities of granting injunctive relief.  Hall and Wagner further argue that the injunctive relief

was too broad because several of its provisions: (1) were not supported by the pleadings or

evidence; or (2) restricted their lawful activities. Finally, they argue that the court enjoined the completion of a structure that, as a matter of law, was not a nuisance. We reverse the trial court's judgment as it relates to some of the alleged nuisances. We render judgment as to certain nuisances, but remand the cause for further consideration as to other nuisances. We affirm the remainder of the judgment.

## BACKGROUND

Since the 1980s, the Seals have lived in rural Medina County. In 2004, Hall and Wagner purchased an adjacent eleven-acre lot. Several issues arose between Hall and Wagner and the Seals regarding the former's use of their property. Though Hall and Wagner did not live on their lot, they used the land as a hay farm and to store several pieces of farming and landscaping equipment, as well as windows, glass, and tin. They placed the equipment along the property line, close to the Seals' house, driveway, and garage. To separate the Seals' home from Hall and Wagner's equipment, Mr. Seal built a privacy fence.

For unknown reasons, Hall, Wagner, and their family and friends began to socialize on their lot near the Seals' house. On several occasions, they hunted dove and sometimes shot over the privacy fence. Hall and Wagner also constructed a go-kart track on their property near the Seals' pool and kitchen. Their use of the track would stir up dust that travelled onto the Seals' property. Early in the morning and late in the evening, Hall would frequently drive his truck near the fence to load and unload his equipment. Hall and Wagner would also play music so loudly that the Seals' house would rumble, and porcelain items would fall off the wall and break.

Mrs. Seal occasionally caught Hall stalking her. Many times when Mrs. Seal drove past Hall in his truck, Hall would circle around and follow her. On one occasion, Mrs. Seal caught Hall in the bushes, spying on her by peering through the privacy fence. On another occasion,

Mrs. Seal noticed Hall behind the privacy fence eavesdropping on her conversation. Mrs. Seal frequently saw Hall standing outside of her kitchen window when she was cooking in the evenings.

In 2006, Hall and Wagner built a water tower and started building another structure along the common property line near the Seals' home by erecting twelve steel posts that stood about eighteen feet tall. Over time, Hall and Wagner installed electricity and plumbing in the structure. The Seals feared that this new structure would be a "base of operations" from which Hall and Wagner would continue their relentless actions to harass them. The Seals attempted several times to get Hall and Wagner to voluntarily stop their activities near their home. The Seals consulted a counselor and their minister, and had friends talk to Hall and Wagner about stopping their activities.

After their efforts failed, the Seals brought a nuisance action against Hall and Wagner. The Seals requested the following injunctive relief:

> [T]hat the barn be moved 150 feet from the Plaintiffs' kitchen/dining room, garden area, swimming pool and barbeque pit. Plaintiffs request that Defendants be enjoined from driving along the fence in order to harass and harm Plaintiffs' peaceful enjoyment of their property, playing loud music, growing weeds and trees on the fence line, stacking boards and junk along the fence line and placing equipment near or on the fence line.

In the two weeks before trial, Hall and Wagner accelerated their construction of the structure, which appeared to be a barn for storing hay.

At the close of trial, the jury found that Hall and Wagner "create[d] a nuisance which was a cause in fact of . . . injury to [the Seals]." The jury charge explained that a nuisance occurs by either:

> (1) physical harm to property such as encroachment of a damaging substance or by the property's destruction; (2) physical harm to a person on his property, such as an assault to his senses . . . ; [or] (3) emotional harm to a person from the

deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense or loss of peace of mind.

The trial court then rendered judgment, enjoining several of Hall and Wagner's objectionable activities. Hall and Wagner appeal the judgment.

## GRANT OF INJUNCTIVE RELIEF

To be entitled to permanent injunctive relief, an applicant must establish the existence of an irreparable injury and the lack of an adequate legal remedy. *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 700 (Tex. App.—San Antonio 1998, pet. denied).[1] Moreover, in deciding whether to grant an injunction, a trial court balances the equities regarding the benefits achieved and burdens imposed by an injunction. *See Storey v. Central Hide & Rendering Co.*, 226 S.W.2d 615, 618–19 (Tex. 1950). Hall and Wagner argue that the trial court erred by granting injunctive relief because: (1) the Seals presented no evidence that they lacked an adequate legal remedy or that they suffered an irreparable injury; and (2) the trial court heard no evidence regarding the balancing of the equities.

### A. Standard of Review

An appellate court reviews a trial court's grant of a permanent injunction for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood of Houston & S.-E. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). We do not substitute our judgment for the trial court's judgment "unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We view the evidence in a light most favorable to the trial court's judgment. *Swate*, 966 S.W.2d at 700. If some evidence appears in the record that reasonably supports the trial court's decision, there is

---

[1] The applicant must also show a wrongful act and an imminent harm. *Id.* However, Hall and Wagner argue only the lack of an irreparable injury and the availability of an adequate legal remedy.

no abuse of discretion. *Id.* The trial court abuses its discretion only if the record contains no evidence supporting the trial court's findings. *Operation Rescue Nat'l*, 975 S.W.2d at 560.

## B. Irreparable Injury & Lack of an Adequate Legal Remedy

A party suffers an irreparable injury and has no adequate legal remedy if a nuisance is of a recurring nature. *See Etan Indus., Inc. v. Lehmann*, 308 S.W.3d 489, 512 (Tex. App.—Austin 2010, pet. filed); *Holubec v. Brandenberger*, 214 S.W.3d 650, 656 (Tex. App.—Austin 2006, no pet.). A nuisance is of a recurring nature if the evidence shows that the author of the nuisance will not cease the nuisance without a court order. *See Holubec*, 214 S.W.3d at 656.

Wagner admitted that she would not cease the complained of activities on her property even if they created a condition that substantially interfered with the Seals' use and enjoyment of their property. Hall testified that he would not consider moving the barn and agreed with Wagner's testimony about their activities. Thus, the trial court did not abuse its discretion because the evidence established that the nuisance was of a recurring nature and thereby supported the existence of an irreparable injury and the lack of an adequate legal remedy because the nuisance was of a recurring nature. *See Etan Indus.*, 308 S.W.3d at 512; *Holubec*, 214 S.W.3d at 656.

## C. Balancing of the Equities

In determining whether to grant injunctive relief, a trial court balances the equities and relative hardships on the parties and the public. *See Storey*, 226 S.W.2d at 618–19. In balancing the equities, a trial court may compare evidence of harm that could result to the defendant and the public by granting the injunction with the evidence of harm to be sustained by the complainant if the court denies the injunction. *See id.* "If the court finds that the injury to the complainant is slight in comparison to the injury caused the defendant and the public by

enjoining the nuisance, relief will ordinarily be refused." *Id.* at 619. A trial court may consider evidence that was presented to the jury or to the judge outside of the presence of the jury. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 287 (Tex. 2004). The conclusion that the balance of the equities favors an injunction lies within the trial court's sound discretion. *See Lee v. Bowles*, 397 S.W.2d 923, 929 (Tex. Civ. App.—San Antonio 1965, no writ).

The trial court heard significant evidence from the Seals that the actions of Hall and Wagner disrupted their daily lives. Hall testified that the barn was erected a few days before trial, and admitted to assuming the risk of having to tear down the barn in the case of an adverse decision by the court. Hall also testified that building the barn on other parts of his property would cost him more in terms of installing electricity and building a road. The trial court heard evidence that Hall and Wagner's lot was eleven acres. The Seals requested that the structure be moved 150 feet away from the common property line, leaving significant room for Hall and Wagner to rebuild their barn. Because there was some evidence of the relative hardships to the Seals and to Hall and Wagner, the trial court did not abuse its discretion in concluding that the balance of the equities favored granting the injunction. *See Storey*, 226 S.W.2d at 619; *Lee*, 397 S.W.2d at 927. Moreover, the trial court was not required to hold a separate evidentiary hearing to reconsider the evidence already presented as to the relative hardships. *See Bates*, 147 S.W.3d at 289.

SCOPE OF THE INJUNCTIVE RELIEF

Hall and Wagner next argue that the injunction is overly broad because: (1) several of its provisions are not supported by both the pleadings and the evidence; (2) some provisions restrict their lawful activities; and (3) the provision relating to their barn enjoins an activity that is not a

nuisance as a matter of law.[2]  Specifically, Hall and Wagner complain of the injunctive relief as it relates to: (1) the barn; (2) the water tower; (3) farming equipment; (4) non-farming and other equipment; (5) the shed; (6) boards; (7) other materials; (8) hay bales; (9) driving; (10) shooting; (11) noise levels; (12) drainage points; (13) weeds and trees; (14) dirt and dust; and (15) "interfering with normal use and enjoyment of the Seal property" and "harassing behavior directed toward the Seals, their property and/or home."

## A.  Standard of Review

A trial court generally possesses great discretion in issuing an injunction.  *Operation Rescue Nat'l*, 975 S.W.2d at 560.  A trial court abuses its discretion if the scope of an injunction is not supported by the pleadings, the evidence, or the usages of equity.  *Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003).  An applicant for an injunction must be specific in pleading the relief sought, and a court is without authority to grant relief beyond what is requested.  *San Augustine Indep. Sch. Dist. v. Woods*, 521 S.W.2d 130, 132–33 (Tex. Civ. App.—Tyler 1975, no writ).  A trial court also abuses its discretion by entering an injunction that is so broad as to either grant plaintiffs more relief than they are entitled to or enjoin defendants from conducting lawful activities and exercising legal rights.  *Holubec*, 111 S.W.3d at 39–40.

## B.  The Barn

Hall and Wagner were directed to move their barn at least 150 feet from the privacy fence and seventy-five feet from the remainder of the common property line.  Hall and Wagner argue that (1) the barn is not a nuisance under the Right to Farm Act; and (2) neither the pleadings nor

---

[2]  A "nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities."  *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003).  "There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme— may constitute a nuisance."  *Bates*, 147 S.W.3d at 269.

the evidence supports the 150-foot distance for the setback. Hall and Wagner do not challenge the sufficiency of the evidence that the barn was a nuisance.

*1. The Right to Farm Act*

Under the Right to Farm Act, an owner of agricultural property is not liable to another owner of agricultural property for agricultural improvements, including a barn, on the former's property. TEX. AGRIC. CODE ANN. § 251.006(a) (West 2006). The Seals claim that Hall and Wagner waived this defense because it was not pleaded.

An affirmative defense must be specifically pleaded. TEX. R. CIV. P. 94. "An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover." *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996) (citation and internal quotes omitted). Hall and Wagner respond that the Right to Farm Act is an inferential rebuttal issue that was preserved by their general denial, rather than an affirmative defense that must be pleaded. An inferential rebuttal defense "is one which seeks to disprove the existence of an essential element submitted in another issue." *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978). "The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery." *Id.*

The Right to Farm Act would defeat liability even if all the nuisance elements were established. *See* TEX. AGRIC. CODE ANN. § 251.006(a). We, therefore, hold that the Right to Farm Act provides an affirmative defense rather than an inferential rebuttal defense. *See id.*; TEX. R. CIV. P. 94; *Tex. Beef Cattle Co.*, 921 S.W.2d at 212. Consequently, because Hall and Wagner did not specifically plead the Right to Farm Act as an affirmative defense, they waived

this defense. *See* TEX. R. CIV. P. 94; *Rosestone Properties, Inc. v. Schliemann*, 662 S.W.2d 49, 53 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.).

### 2. *Evidence & Pleadings*

An injunction must be reasonably justified by the "pleadings, the evidence, and the usages of equity." *Holubec*, 111 S.W.3d at 39. Hall and Wagner argue that the injunction relating to the barn is not supported by the pleadings because the Seals requested a 150-foot buffer from "Plaintiffs' kitchen/dining room, garden area, swimming pool and barbeque pit," not from the fence line. The injunction prohibited the construction of the barn within 150 feet of the privacy fence and seventy-five feet from the remainder of the common property line. The Seals requested that Hall and Wagner be enjoined from constructing the barn within 150 feet of four fixed points on their property. Their request only pertained to the area on the Hall and Wagner lot within 150 feet of these points. However, the injunction prohibits the construction of a barn in the area on Hall and Wagner's property that extends 150 feet from the entire length of the Seals' fence as it runs past their house, driveway, swimming pool, garden area, and barbeque pit. The injunction also prohibits the construction of the barn within seventy-five feet from the remainder of the common property line as it runs north and south away from the Seals' home. Because the injunction enjoined the construction of a barn on an area of Hall and Wagner's property that was not reasonably justified by the pleadings, the trial court abused its discretion. *See id.*

### C. Farming Equipment

The injunction directed Hall and Wagner to move their farming equipment at least fifty feet[3] from the common property line. At trial, Mr. Seal testified that he did not mind the farming equipment on the Hall and Wagner property, and did not testify to any physical or emotional

---

[3] The distances of the trial court's setbacks varied from fifty feet to one hundred fifty feet.

harm or property damage resulting from the farming equipment. Because the injunction's provision regarding the farming equipment is not supported by the evidence, the trial court abused its discretion. *See id.* at 39–40; *Operation Rescue Nat'l*, 975 S.W.2d at 560.

### D. Non-Farming & Other Equipment

The court also applied the fifty-foot setback to non-farming and other equipment. Though both of the Seals testified that Hall and Wagner's stacking of equipment near and on the fence line emotionally harmed them and interfered with their enjoyment of property, their testimony related only to the stacking of the materials to be used to construct the barn. There was no evidence that the stacking of non-farming and other equipment—for any other reason than to construct the barn—caused the Seals physical or emotional harm or property damage. Thus, the injunction's absolute prohibition on the placement of non-farming and other equipment within the fifty-foot setback is not supported by the evidence and constitutes an abuse of discretion. *See Holubec*, 111 S.W.3d at 39–40; *Operation Rescue Nat'l*, 975 S.W.2d at 560.

### E. The Shed

The injunction also prohibited Hall and Wagner from placing a shed within fifty feet of the common property line. Because the Seals presented no evidence that the shed had caused them physical or emotional harm or property damage, the provision regarding the shed is not supported by the evidence or pleadings and constitutes an abuse of discretion. *See Holubec*, 111 S.W.3d at 39–40; *Operation Rescue Nat'l*, 975 S.W.2d at 560.

### F. Boards

The injunction applied the fifty-foot setback to the placement of boards near the Seals' property. Hall and Wagner argue only that the setback line is "much further away" than what the Seals requested, which was that the boards not be placed "on or near" the fence. Because they

do not challenge the sufficiency of the evidence that the boards constituted a nuisance, the trial court could have concluded that, to abate this nuisance, the fifty-foot setback was reasonably justified by the pleadings, evidence, and usages of equity. *See Holubec*, 111 S.W.3d at 39.

## G. Driving

The injunction also provided, "Driving within fifty feet (50') of the common property line is prohibited except for legitimate farming purposes and not with the intent to disturb the peace and enjoyment of the Seal family on their property." Hall and Wagner argue that this is overly broad because it is not supported by the pleadings and restricts lawful use of their property. They do not challenge the sufficiency of evidence that their driving activities with the intent to harass the Seals constitute a nuisance.

The Seals requested that Hall and Wagner "be enjoined from driving *along the fence in order to harass* and harm Plaintiffs' peaceful enjoyment of their property." (emphasis added). The injunction is broader than what the Seals requested because it enjoins Hall and Wagner from any non-agricultural driving activities within fifty feet of the entire property line, not just along the privacy fence.[4] In doing so, this provision restricts Hall and Wagner's use of the property for any lawful non-farming purposes that are not intended to harass the Seals. Thus, the trial court abused its discretion because the provision regarding Hall and Wagner's driving was overly broad. *See id.* at 39–40.

## H. Noise Levels

The injunction also provided, "[N]oise levels created by any activity on the Hall/Wagner property shall be limited to 50dB or less as measured from the privacy fence between the Seal/Hall property line." Hall and Wagner argue that this is outside the scope of the Seals'

---

[4] "Driving within fifty feet (50') of the common property line is prohibited except for legitimate farming purposes and not with the intent to disturb the peace and enjoyment of the Seal family on their property."

pleadings, but do not challenge the sufficiency of the evidence that their playing loud music was a nuisance. The Seals requested only that Hall and Wagner be enjoined from "playing loud music." Because the injunction's provision restricts Hall and Wagner's use of the property for all lawful and legitimate activities that create noise levels above fifty decibels, rather than just "playing loud music," the trial court abused its discretion. *See id.*; *Butnaru*, 84 S.W.3d at 204.

## I. Weeds & Trees

The injunction required Hall and Wagner to cut and control weeds and trees near the fence line. Although the Seals testified that they did not like the weeds and trees, no evidence supported that the failure to cut the weeds or trees was a cause in fact of any physical or emotional harm or property damage. Thus, the trial court abused its discretion by issuing an injunction regarding Hall and Wagner's weeds and trees. *See Holubec*, 111 S.W.3d at 39–40; *Woods*, 521 S.W.2d at 132.

## J. The Water Tower, "Other Materials," Hay Bales, Shooting, Drainage Points, Dirt & Dust, and Interference with the Normal Use and Enjoyment of the Seals' Property

The trial court's judgment contained several injunctions directed to several other items and activities on Hall and Wagner's property including: (1) moving a water tower, "other materials," and hay bales away from the property line; (2) refraining from shooting over the privacy fence; (3) keeping their drainage points open; (4) avoiding the stirring up of dirt and dust; and (5) interfering with the Seals' normal use and enjoyment of their property. However, nothing in the Seals' request for injunctive relief mentions any of these items or activities. Consequently, the injunction's provisions regarding these items and activities are not supported

by the pleadings, and are thus an abuse of the trial court's discretion. *See Holubec*, 111 S.W.3d at 39.[5]

## CONCLUSION

Because the Seals presented some evidence that they suffered an irreparable injury and lacked an adequate legal remedy, and because the trial court considered some evidence of the relative hardships of each party, the trial court did not abuse its discretion in granting an injunction; however, the injunctive relief granted was overly broad. Because there was no pleading or evidence to support some of the injunctive relief, we reverse the judgment as it relates to the following: (1) water tower; (2) farming equipment; (3) non-farming and other equipment; (4) shed; (5) "other materials"; (6) hay bales; (7) shooting activities; (8) drainage points; (9) weeds and trees; (10) stirring up of dirt and dust; (11) "interfering with the normal use and enjoyment of the Seal property"; (12) barn; (13) driving near the common property line; and (14) activities creating noise levels in excess of fifty decibels. We render judgment dissolving the injunction as to the following items or activities: (1) water tower; (2) farming equipment; (3) non-farming and other equipment; (4) shed; (5) "other materials"; (6) hay bales; (7) shooting activities; (8) drainage points; (9) weeds and trees; (10) stirring up of dirt and dust; (11) "interfering with the normal use and enjoyment of the Seal property." We remand the cause to the trial court for further consideration of the injunction's provisions relating to: (1) the barn; (2) driving near the common property line; and (3) activities creating noise levels exceeding fifty decibels. Finally, we affirm the remainder of the trial court's judgment.

Rebecca Simmons, Justice

---

[5] Our reversal of the injunction regarding Hall and Wagner's shooting toward the Seals' home does not permit Hall and Wagner to continue such activity to the extent it is otherwise illegal.